## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **HASSAN CONTEH** | * |
| **15487 Chopawamsic Court** | * |
| **Woodbridge,VA 22191** | * |
| | * |
| **PLAINTIFF,** | * |
| | * |
| **v.** | *     **Case No.:** 1:22-cv-01908 |
| | * |
| **AMAZON.COM SALES, INC.** | * **JURY TRIAL DEMANDED** |
| **410 Terry Ave North** | * |
| **Seattle, WA 98109** | * |
| | * |
| **Serve:  Resident Agent** | * |
| **CSC-Lawyers Incorporating Service Company** | * |
| **7 St. Paul Street** | * |
| **Suite 820** | * |
| **Baltimore, MD 21202** | * |
| | * |
| **DEFENDANT.** | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

Plaintiff Hassan Conteh ("Plaintiff"), by and through undersigned counsel, hereby submits

this Complaint for violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

## PARTIES AND JURISDICTION

1.    Plaintiff is over twenty-one years of age and a resident of Virginia.  At all times

relevant to this action, Plaintiff was an employee of Amazon.Com Sales, Inc. ("Amazon").

2.    Amazon is a corporation headquartered in Seattle, Washington and with facilities

in many locations, including Maryland.  At all times relevant to this Complaint, Amazon was, and

remains, an "employer" within the meaning of Title VII, and is a covered entity under that statute.

3.    This Court has jurisdiction over Defendant pursuant to 28 U.S.C. § 1337 relating

to "any civil action or proceeding arising under any Act of Congress regulating commerce." Subject matter jurisdiction is invoked under 28 U.S.C. § 1331.  Venue is proper pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE PROCEEDINGS AND COMMENCEMENT OF THIS ACTION

4.      On January 12, 2022, Plaintiff filed a Charge of Discrimination against Amazon with the Maryland Commission on Civil Rights, which Charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  In his Charge, Plaintiff alleged violations of Title VII for unlawful discrimination and retaliation. By notice dated May 3, 2022, the EEOC provided Plaintiff with his Notice of Right to Sue, stating that Plaintiff could commence an action in his own name within 90 days of receipt of the letter. This action is being timely filed within that 90-day window.

## FACTS

5.      Plaintiff was hired by Amazon on about April 26, 2021, to be the Site Leader at Amazon's Crayton Blvd. warehouse facility located in Hagerstown, MD ("the Site").  Plaintiff's total annual anticipated compensation package was $345,000.  Plaintiff is an African-American male. The Site is staffed predominantly with White male employees.

6.      As a new leader with Amazon, Plaintiff met with the Site leadership team, and detailed his vision of doubling the percentage of woman, minorities, and LGBTQ members in leadership, in direct alignment with Amazon's publicly stated goals of accelerating Diversity, Equity, and Inclusion ("DEI") within its leadership ranks.  At the time of Plaintiff's hire, less than ten percent (10%) of the leadership team was comprised of women, and less than five percent (5%) came from minority and LGBTQ denominations.  Plaintiff worked aggressively to challenge both his internal operations team and the corporate recruiting staff to expand their search for leaders,

directing that women, minorities, and LGBTQ candidates be deliberately sought in the candidate pool. When informed by the corporate recruiting team that the desired pool of female candidates proved not to be forthcoming, Plaintiff responded that that he would hold out on hiring twenty percent (20%) of the senior site leaders (known within Amazon as "Operations Managers") to ensure that, if at all possible, at minimum two of the proposed ten Operations Managers would be female hires. Plaintiff went even further, promoting, transferring-over, and outright hiring more than ten female leaders in the Process Assistant and Area Manager ranks, tripling the number of minority leaders and increasing the number of LGBTQ leaders represented at Site level.

7.      During Plaintiff's brief tenure with Amazon, there were a series of troubling occurrences directly related to Plaintiff's drive to implement and accelerate Amazon's focus on achieving DEI. Individually, each of these occurrences (outlined below) raised troubling questions regarding the internal corporate culture that exists at Amazon. However, when taken together, these occurrences evidence retaliatory actions taken against Plaintiff, who was in pursuit of the very policies that Amazon publicly claims to champion.

8.      In Plaintiff's first week at Amazon, he was met with an onslaught of associates who expressed concerns regarding career growth impediments and racially inappropriate and insensitive statements made by previous Site leadership. Plaintiff was concerned about the unacceptable level of racial insensitivity and intolerance that had existed previously at the Site. While still in the early days of his employment with Amazon, Plaintiff immediately challenged his Operations Managers to ensure they reviewed all future team member coaching, recognition, and hires through the lens of improving DEI within their daily interactions with both associates and Area Managers. Plaintiff also immediately set to work in aggressively pursuing a hiring drive geared towards improving DEI among both the associate and leadership ranks.

3

9.      As a founding pillar of Plaintiff's drive to improve diversity at the Site, he began conducting multiple daily listening sessions with associates and leaders across the Site, both individually and at the work-station level.  During the course of two weeks, Plaintiff heard from a variety of Amazon employees who expressed their concerns with issues ranging from racially-tinged language, inequity in candidates being offered the opportunity to interview for promotional roles, preferential assignments for White managers, and the uneven dispensation of accountability found among minority associates.  Several associates detailed how they had been threatened with losing their shifts for coming to work late; yet others who arrived even later were permitted to work undeterred by previous leadership.  Multiple part-time associates expressed their frustration at being unable to secure shifts following disputes with members of the previous Site leadership. Even more troubling, Plaintiff heard about the worrying rise of harassment displayed by some associates against other employees in the workplace.  Following two weeks of conducting listening sessions, Plaintiff had his roadmap; he set out with the mission of achieving meaningful progress in DEI at the Site.

10.     As Plaintiff concluded his two-week listening sessions through the Site, he left for a previously-scheduled three-week leave.   Although on leave, Plaintiff remained in daily communication with his team, completing required computer e-learning, receiving and sending emails, participating in conference calls, virtually appearing in meetings, conducting interviews, and even participating in interview review sessions known within Amazon as "Debriefs". Throughout the entirety of his three-week leave, Plaintiff showcased a loyalty and commitment to a company he had loved and admired for years.

11.     Upon his return to the Site from his leave, Plaintiff met with several associates and leaders who expressed concerns regarding the happenings during the previous three weeks, while

4

Plaintiff was away. Plaintiff made clear to his Operations team the importance of driving inclusivity and working to develop positive interactions within their individualized and collective teams. Yet, as Plaintiff worked to combat discrimination and drive DEI Site-wide, several members of the Site began to express their discomfort with the scale and scope of the DEI drive which Plaintiff was very publicly spearheading. For example, Plaintiff was approached by an unhappy member of the leadership team who, as a result of a DEI-driven staffing change would now have to work late. The employee warned Plaintiff, presciently and ominously: "You just got here, and you think you can just change things. Don't forget, we can change you".

12.     While working to drive DEI at the Site, Plaintiff simultaneously launched several Site engagement and morale-boosting efforts. For example, Plaintiff increased the size and budget of the Site Associate Engagement Committee, to better reflect a balanced and more diverse pool of associates and leaders. He also authorized the doubling of the Site Training Leadership Team, to ensure consistency of messaging Site-wide. Plaintiff then moved to launch an employee-of-the-month program, which was described by the Regional HR Manager as "Fantastic program I'd love to see rolled out network wide."

13.     Shortly after launching the new employee-of-the-month program, Plaintiff began to hear of dissatisfaction among some associates within the Site as to why the predominantly Latinx vendor cleaning team (whom they referred to as "these people") should be allowed to participate. In an effort to understand and address this, Plaintiff held a listening session with the three associates who expressed these views. During the course of these listening sessions, one of the associates exploded with another implicit threat: "Well, seeing as you want to just support these people, I'll just call HR and see if you still have a job." Undaunted by this threat, Plaintiff moved forward with his employee-of-the-month initiative. Several days following that listening

session, a member of the Regional HR team called Plaintiff, stating "I'm getting some complaints from some associates at the site. I love what you're doing but try not to do too much too fast."

14.     In a separate incident, Plaintiff ordered walkie-talkies for the Site, to improve overall communication.  In addition to the staff directly employed by Amazon, Plaintiff also had walkie-talkies ordered and assigned to the staff of the on-site cleaning vendor (KBS).  Upon hearing that several walkie-talkies had been assigned to the predominantly Latinx cleaning crew, one team member stated: "Here he goes again, spending our money on these people. I hope HR knows how he is wasting money. I have someone I can call. Trust me, he's not going to last long."

15.     Once again, only days after this incident, another call was received by Plaintiff from a member of the Regional HR team, inquiring as to the morale and engagement at the Site.

16.     The following week, while conducting his Wednesday All Leaders meeting, Plaintiff shared the launch of a weekly "Leadership Principle of the Week" program to increase associate awareness of Amazon's leadership principles.  Plaintiff then sent out a message with an image of the Amazonian Leadership principle "Learn and Be Curious," encouraging leaders to be deliberate and positive in driving awareness of the week's leadership principle.  The next day, Plaintiff received a call from a member of the Regional HR team, explaining that a concern had been raised due to the picture message that had been sent out the previous day. However, upon being read the message, and seeing the image in its proper context, the Regional HR member stated "There's not an issue that I can see here. The intention was clearly focused on the leadership principles. I don't see why this would be escalated to me. I'm sure it's because your team is still trying to learn who you are. From what I see, there's no need for further action."

17.     Two days after this call, Plaintiff learned of a harassment incident involving a male member of the team and a relatively new female team member.  Plaintiff pushed for, and ultimately

secured, a suspension of the male associate after hearing of how intimidated and embarrassed the female victim was made to feel.  Plaintiff strongly believed his actions were in accord with Amazon's DEI principles.  However, an employee at the Site confronted Plaintiff, stating: "You took her word over his. You don't know what to leave alone. You'll pay for this."

18.     Two days later, Plaintiff was called by a member of the corporate investigations team, who told him that an internal harassment investigation was being conducted against Plaintiff regarding the picture that had been previously declared benign.  Notwithstanding being told that this matter was closed, Plaintiff was nevertheless suspended by the Regional HR Manager on about July 17, 2021 for the distribution of the "Learn to be Curious" Leadership Principle to his senior management team.  After a harassment complaint was filed against him as a consequence of this action, he was told that there would be an investigation into his alleged "gross misconduct."

19.     Plaintiff was terminated by the Regional HR Manager on July 20, 2021, before the investigation was even concluded.  The next day, July 21, 2021, Plaintiff received the results of the investigation, which completely exonerated him.  The investigator concluded: "[M]y investigation is complete.  Based on the facts gathered, the investigation did not find any violation of Amazon policy or standards of conduct."

## CAUSE OF ACTION
### Violation of Title VII
### (Unlawful Discrimination and Retaliation)

20.     Plaintiff realleges and reasserts each and every allegation set forth in the paragraphs above, as if each were set forth herein.

21.     As set forth above, Amazon has violated Plaintiff's rights under Title VII by discriminating against him on the basis of race, color, and national origin and/or retaliating against him for engaging in protected activity.

22.     Defendant's discrimination and retaliation against Plaintiff, including termination of Plaintiff's employment, has caused Plaintiff to suffer damages, including but not limited to the loss of his employment and emotional distress damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for relief as follows:

A.     That the Court award actual damages, including appropriate amounts of back pay, front pay, and wages lost;

B.     In the alternative to front pay, the Court order Amazon to reinstate Plaintiff to his previous position;

C.     That the Court award compensatory damages in the amount of Three Hundred Thousand Dollars ($300,000.00) for each violation of Title VII;

D.     That the Court award punitive damages in the minimum amount of One Million Dollars ($1,00,000.00);

E.     That the Court award costs and reasonable attorney's fees; and

F.     That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

_____/s/_____
Philip B. Zipin, Esq., Bar No. 03932
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910
(301) 587-9373 (ph)
Email: pzipin@zagfirm.com
           rlpike@zagfirm.com

*Counsel for Plaintiff*

8

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

_____/s/_____
Philip B. Zipin